IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARYLAND CASUALTY COMPANY,    :
                                                    :
               Plaintiff,          :
                                                      :
v.                                            :     Civil Action File
                                            :     No. _____
NUTRAGENOMICS, MFG., LLC;     :
NUTRAGENOMICS, LLC, a fictitious   :
company; THOMAS MALONE, JR.; and :
DREW T. GREEN,              :
                                              :
               Defendants.    :

**COMPLAINT FOR RESCISSION OR IN THE ALTERNATIVE
DECLARATORY JUDGMENT**

Plaintiff Maryland Casualty Company ("MCC"), for its Complaint against the Defendants alleges as follows:

## I. Introduction

1.

This lawsuit arises out of an application for a general liability insurance policy ("Application") submitted for a purported entity, Nutragenomics, LLC, that stated the nature of the business and description of operations was "[sale] of natural health products to other companies (retail), not packaging or manufacturing products."  In fact, the actual name of the entity was Nutragenomics, ***Mfg,*** LLC,

(emphasis added) and the company did package and manufacture products. Moreover, some or all of the products were illegal in some or all of the states in which the products were sold. Defendant Thomas Malone, Jr., ("Malone") is identified as the Inspection Contact in the application. Defendant Drew T. Green is identified in other materials as the organizer of Nutragenomics, Mfg, LLC.   In reliance on the application, MCC issued policy PAS04132074 to Nutragenomics, LLC for the period 05/03/10 – 05/03/11 and renewed the policy for the period 05/03/11 – 05/03/12 ("Policies").   Had Nutragenomics disclosed that it was packaging or manufacturing products or that some or all of its products were illegal in some or all states in which they were marketed, MCC would not have issued the Policies.  MCC seeks to rescind the Policies based upon the misrepresentations and nondisclosure in the application.  In the alternative, MCC seeks a declaration that, *inter alia*, the Policies do not provide any coverage for claims arising out of or in any way connected to Nutragenomics' sale of illegal products and that Nutragenomics, Malone and Green breached the conditions of the policies to provide timely notice.  Nutragenomics, Malone and Green have been sued and claims have been made asserting liability arising from the illegal products sold by Nutragenomics.

## II.  **The Parties**

2.

Plaintiff MCC is a Maryland corporation with its principal place of business at 1400 American Lane, Schaumberg, Illinois 60196-1056 and is duly authorized to conduct business in the State of Georgia.

3.

Defendant Thomas Malone, Jr. is a resident of Fulton County, Georgia, and can be served with process at 110 Steeple Gate Lane, Roswell, Georgia  30076.

4.

Defendant Drew T. Green is a resident of Fulton County, Georgia, and can be served with process at 2650 Holcomb Bridge Road, Suite 520, Alpharetta, Georgia 30022.

5.

Defendant Nutragenomics, LLC, is a fictitious company, represented by Malone and Green to be a limited liability company formed in Georgia.

6.

On information and belief, Defendant Nutragenomics, Mfg. LLC, is a limited liability company formed in Georgia, the principals of which were or are Defendants Malone and Green, who are residents of Georgia. Per the Georgia

Secretary of State, Nutragenomics can be served through its registered agent for service; Marshall Rocks at 2910 Cole Court Suite G, Norcross GA 30092.

### III.   Jurisdiction and Venue

7.

This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332.  Complete diversity exists between MCC, on the one hand, and each of the Defendants on the other hand.  The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

8.

This Court has personal jurisdiction over each of the Defendants.

9.

Venue is proper in the Northern District of Georgia, the judicial district in which all of the Defendants reside, pursuant to 28 U.S.C. §§ 1391 (a) and (c).

### IV.   Facts

### Application for Insurance

10.

On or about May 11, 2010, Nutragenomics, LLC, submitted to MCC a "Commercial Insurance Application" for a commercial general liability policy ("Application"). A true and correct copy of the Application is attached hereto as

- 4 -

Exhibit A.

11.

Under Nature of Business/Description of Operations By Premises, Nutragenomics stated: "[Sale] of natural health products to other companies (retail), not packaging or manufacturing." (See Exhibit A).

12.

The Application states: "BOP/Package Eligibility": "Ineligible – Any operations that manufacture or formulate (including mixing or blending) any products; any operations that repackage, label or re-label any products." (See Exhibit A).

13.

The "Name" listed on the "First Named Insured & Other Named Insureds" was "Nutragenomics, LLC," rather than the real name of the entity owned and operated by Malone and Green, which was Nutragenomics, ***Mfg***., LLC. (emphasis added) (See Exhibit A).

14.

There was no disclosure in the Application, at the time of renewal or at any other time that some or all of Nutragenomics' products were illegal in some or all of the states in which they were marketed.  (See Exhibit A).

15.

In fact, Nutragenomics distributed and sold products in at least 25 states that were Schedule I controlled substance analogues as defined in 21 USC Section 802 and other state statutes, including but not limited to synthetic cannabinoids.

16.

Nutragenomics stored the majority of its synthetic cannabinoids in California in order to evade the more strict Georgia state law that targeted synthetic cannabinoids.

17.

The strategy of Nutragenomics was to anticipate legislation aimed at banning a specific synthetic cannabinoid substance and slightly alter that particular banned substance so as to technically create a new substance not specifically addressed by the legislative ban.

18.

Nutragenomics, through Malone and Green, developed their own synthetic cannabinoid blend that infused the synthetic cannabinoids into a vegetable material that resembled marijuana.  Packaging on that product said that it was not for human consumption, but that packaging was designed to be intentionally misleading as to both what was in the product and what the product's intended use

was. The product was intended by Nutragenomics, Malone and Green to be ingested/smoked in order to get the customer high off the active ingredient, the synthetic cannabinoid.

## **West Virginia Lawsuit**

19.

On April 30, 2012, the State of West Virginia by and through the Attorney General filed suit in the Circuit Court of Putnam County, West Virginia, Civil Action No. 12-C-129 against Nutragenomics Mfg., LLC, a Georgia Limited Liability Company, and Drew Green, individually and as sole organizer of Nutragenomics Mfg., LLC, a Georgia Limited Liability Company.  (See Exhibit B). ("West Virginia Complaint")

20.

In the West Virginia Complaint, the State of West Virginia alleged that Nutragenomics and Green marketed and sold chemicals that were used to create synthetic controlled substances that imitate the effects of marijuana, Ecstasy (MDMA), cocaine and methamphetamine and that these synthetic drugs were sold on the market as "incense" "bath salts" "plant food' and other false labels. (See Exhibit B.)

21.

The West Virginia Complaint also alleged that the synthetic drugs were harmful to humans and might cause any number of lasting physical and psychological side effects, citing an April 2012 article in the Cleveland Clinic Journal of Medicine. (See Exhibit B).

22.

The West Virginia complaint alleged that the synthetic drugs were illegal in West Virginia and asserted that Nutragenomics Mfg., LLC represented that it was a manufacturer, distributor and wholesaler of raw materials, herbs, fine chemicals and research chemicals which the State of West Virginia alleged to be harmful to the citizens of West Virginia. (See Exhibit B).

23.

The West Virginia Complaint further alleged that at least one consumer purchased the harmful chemicals directly from the defendants including specifically JWH – 018, mefadrone, and AM – 2201 which were alleged to be AM analogue chemical and synthetic cannabinoids. (See Exhibit B).

24.

The West Virginia Complaint alleged that Defendant Green was an organizer of Nutragenomics and managed and controlled the day to day business of

Nutragenomics.

25.

On July 18, 2012, Nutragenomics Mfg., LLC signed a consent order agreeing not to sell or advertise in West Virginia as a result of the West Virginia lawsuit.

**The Kentucky Lawsuit**

26.

On December 21, 2012, Brady Conaster brought suit in the Christian Circuit Court, Kentucky, Civil Action No. 12-CI-01470, against several defendants including Nutragenomics Mfg., LLC, Tommy Malone, Jr. and Drew Green. ("Kentucky Complaint")

27.

In the Kentucky Complaint, the plaintiff alleged that his lawsuit was a personal injury action brought for injuries caused to the plaintiff as a result of ingesting the defendants' unreasonably dangerous defective product.

28.

The Kentucky Complaint further alleged that the product ingested by Mr. Conaster, Bang Bang Potpourri, and its harmful ingredients were manufactured, marketed, designed, distributed and sold for the intended use by Nutragenomics Mfg., LLC, Tommy Malone, Jr. and Drew Green, among others.

29.

The Kentucky Complaint further alleged that the underlying defendants knew or through the exercise of reasonable care should have known that Bang Bang Potpourri and its ingredients were not safe for human consumption, were unreasonably dangerous and defective and contained illegal substances that were likely to cause physical injury.

30.

On information and belief, Malone was served with the Kentucky Complaint on January 5, 2013.  On information and belief, Green and Nutragenomics were served with the Kentucky Complaint at approximately the same time.

**Police Raid on Nutragenomics**

31.

On July 25, 2012, there was a police raid at Nutragenomics' manufacturing building in Georgia after which the Georgia Bureau of Investigation stated that Nutragenomics was a "major national distributor of synthetic cannabinoids."

**Criminal Prosecution and Guilty Pleas of Malone and Green for Distribution of Controlled Substances through Nutragenomics**

32.

On September 7, 2012, Defendant Green, as a co-owner of Nutragenomics Mfg. LLC, entered a guilty plea in the Western District of Louisiana admitting that he

was a co-conspirator with Malone, Nutragenomics and others to possess with the intent to distribute Schedule I controlled substance analogues knowing that the substance was intended for human consumption and that it was unlawful.

33.

On September 19, 2012, Defendant Malone, as a co-owner of Nutragenomics Mfg. LLC, entered a guilty plea in the Western District of Louisiana admitting that he was a co-conspirator with Green, Nutragenomics and others to possess with the intent to distribute Schedule I controlled substance analogues knowing that the substance was intended for human consumption and that it was unlawful.

## V.   **The Policies**

34.

 MCC issued to Nutragenomics, LLC Policy No. PAS04132074 for the period 05/03/10 – 05/03/11 and renewed it for the period 05/03/11 – 05/03/12.  Certified copies of the Policies are attached hereto as Exhibits C and D.

35.

The policies contain the Commercial General Liability Coverage Form, 9S 2001, 4-99 edition with CG 00 57 9-99 endorsement entitled Amendment of Insuring Agreement-Known Injury or Damage which reads in part as follows:

COVERAGE A BODILY INJURY AND PROPERTY
DAMAGE LIABILITY
(Amended via endorsements CG 00 57 9-99)

1. Insuring Agreement

a. We will pay those sums that the insured becomes
legally obligated to pay as damages because of
"bodily injury:" or "property damage" to which
this insurance applies. We will  have the right and
duty to defend the insured against any "suit"
seeking those damages. However, we will have no
duty to defend the insured against any "suit"
seeking damages for "bodily injury" or "property
damage" to which this insurance does not apply.
We may, at our discretion, investigate any
"occurrence" and settle any claim or "suit" that my
result. But:

(1)   The amount we will pay for damages is
limited as described in Section III-Limits  of
Insurance; and

(2)   Our right and duty to defend end when we
have used up the applicable limit of
insurance in the payment of judgments or
settlements under Coverages A or B or
medical expenses under Coverage C.

No other obligation or liability to pay sums or
perform acts or services is covered unless
explicitly provided for under Supplementary
Payments-Coverages A and B.

36.

The Policies contain the following relevant definitions:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease

13. "Occurrence" means an accident, including continuous or repeated  exposure to substantially the same general harmful conditions.

37.

The Policies also contain Section II- Who Is An Insured which reads in part as follows:

SECTION II-WHO IS AN INSURED

1. If you are designated in the Declarations as:

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to your duties as your managers.

2. Each of the following is also an insured:

a. Your "employees" other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by your or while performing duties related to the conduct of your business. ….

38.

The Policies contain the following conditions:

We now refer you to Section IV of your policy entitled
COMMERCIAL GENERAL LIABILITY CONDITIONS

2. Duties In The Event of Occurrence, Offense, Claim
Or Suit

   a. You must see to it that we are notified as soon as
practicable of an "occurrence" or an offense which
may result in a claim.   To the extent possible,
notice should include:

      (1) How, when and where the "occurrence" or
"offense" took place;

      (2) The names and addresses of any injured
persons and witnesses; and

      (3) The nature and location of any injury or
damage arising out of the "occurrence" or
offense.

   b. If a claim is made or "suit" is brought against any
insured, you must:

      (1) Immediately record the specifics of the claim
or "suit" and the date received and;

      (2) Notify us as soon as practicable.

     You must see to it that we receive written notice of
the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands,
notices, summonses or legal papers received in
connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

39.

The Policies include a Commercial Umbrella Coverage Form, 982003 ed 1-96, which reads similarly in pertinent part to the Commercial General Liability form.

40.

Nutragenomics and Green have never tendered to MCC notice of any suit against Nutragenomics or Green, nor have they ever provided notice of any purported occurrence.

41.

On January 23, 2013, MCC received its first notice from Malone that he had been sued in the Kentucky complaint, although the Kentucky complaint was not provided to MCC until January 28, 2013.

42.

Prior to January 23, 2013, Malone had not provided notice to MCC of any occurrence, claim or suit regarding himself or Nutragenomics.

43.

MCC has agreed to participate in Malone's defense in the Kentucky Lawsuit pursuant to a full reservation of rights and has reserved the right to seek recoupment of defense costs paid in defense of Malone in the Kentucky Lawsuit.

## VI.   CAUSE OF ACTION
## COUNT I- RESCISSION OF THE POLICIES

44.

MCC incorporates the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45.

Nutragenomics, as an applicant for insurance, owed a duty to disclose truthful and material information to MCC, including disclosing all information about its operations.

46.

Nutragenomics breached its duty by failing to disclose that it packaged and manufactured products and that it sold illegal products.

47.

Nutragenomics knew that MCC would rely on the information it provided in the Application.

48.

Nutragenomics knew that information provided on the Application was material to MCC's determination to insure Nutragenomics.

49.

Nutragenomics knew that it had failed to disclose material information and that what was disclosed was false in part.

50.

Nutragenomics provided the false information and failed to disclose information with the intent to deceive MCC.

51.

MCC reasonably and justifiably relied on the information provided to it by Nutragenomics on the Application, in deciding whether to issue the Policies to Nutragenomics.

52.

If MCC had known that Nutragenomics was packaging or manufacturing products and was selling illegal products, MCC would not have issued the Policies.

53.

The information was material to the risk assumed by MCC.

54.

MCC has acted promptly in filing this action to rescind the Policies.

55.

MCC has returned or offered to return all premium payments made by Nutragenomics for the Policies by depositing those amounts with the registry of the Court concurrent with the filing of this Complaint.

56.

As a result of Nutragenomics intentionally false information and failure to disclose, MCC is entitled to rescind the policies *ab initio* and restore the parties to their status prior to the formation of the Policies.

57.

Therefore, MCC has no duty to defend or indemnify Nutragenomics, Green or Malone for the Kentucky Lawsuit or any other claim arising from sale of products by Nutragenomics.

## COUNT II- IN THE ALTERNATIVE, DECLARATORY RELIEF

58.

MCC incorporates the allegations set forth in paragraphs 1 through 57 as if fully set forth herein.

59.

MCC does not have any obligation to defend or indemnify Nutragenomics, Green or Malone for any damages, losses, claims, costs or expenses arising out of or related to the claims asserted in the Kentucky Lawsuit or as any other claims on numerous grounds, including but not limited to:

a. O.C.G.A. § 33-24-7 bars any recovery under the Policies including any obligation to defend or indemnify any of the Defendants for any claims arising out of Nutragenomics' operations because Nutragenomics fraudulently failed to disclose the nature of its operations, which fact was material to the risk assumed by MCC, and if known to MCC would have resulted in MCC not issuing the Policies;

b. To the extent that the damages sought in the Kentucky Lawsuit is for "bodily injury" expected or intended from the standpoint of the insured, there is no coverage;

c. To the extent that the damages sought in the Kentucky Lawsuit arise out of

actions by Malone or Green that were not taken with respect to the conduct of Nutragenomics business, Malone and Green are not insureds and there is no coverage for Malone or Green;

d. Nutragenomics, Malone and Green breached their duties to provide timely notice of occurrence, notice of claims and forwarding of lawsuits such that they are barred from recovery under the Policies.

e. The Policies are void *ab initio* as against public policy given the illegal nature of Nutragenomics business operations.

WHEREFORE, MCC seeks judgment as follows:

(a) Rescind *ab initio* Policy No. PAS04132074 issued by MCC to Nutragenomics;

(b) In the alternative for a declaration that MCC has no duty to defend, indemnify, or reimburse any of the Defendants or otherwise pay for any damages, losses, claims, costs, or expenses arising out of the Kentucky Lawsuit or any other claims;

(c) For reimbursement from Malone of all costs paid by MCC in connection with the defense of Malone in the Kentucky Lawsuit.

(d) For the costs of this suit; and

(e) For such other and further relief as this Court may deem just and

proper.

Respectfully submitted this 15th day of March, 2013.


                              /s/ Linda B. Foster
                              Linda B. Foster
                              Georgia Bar Number 081535
                              Christopher C. Meeks
                              Georgia Bar Number 371020
                              *Attorneys for Plaintiff Maryland Casualty*
                              *Company*

Weissman, Nowack, Curry & Wilco, PC
One Alliance Center
3500 Lenox Road, 4th Floor
Atlanta, Georgia 30326
(404) 926-4500
Fax (404) 926-4700
lindafoster@wncwlaw.com
christophermeeks@wncwlaw.com